IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
19 CV _____

ANITA GENTLE,                       )
                                    )
      Plaintiff,              )
                                    )
v.                                  )
                                    )
                                    )
LIBERTY LIFE ASSURANCE              )
COMPANY OF BOSTON,                  )
                                    )
      Defendant.              )

## COMPLAINT

Now comes the Plaintiff, ANITA GENTLE, by and through counsel, and complaining against the Defendant, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, she states:

*Jurisdiction and Venue*

1. Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of group-long term disability ("LTD") insurance coverage underwritten and administered by Liberty Life Assurance Company of Boston ("Liberty"), for the benefit of employees of Advanced Home Care, Inc. ("Advanced Home Care"). Additionally,

this action may be brought before the court pursuant to 28 U.S.C. 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2. The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Venue is proper in the Middle District of North Carolina since the plan is administered in this district, the breach took place in this district, and the Defendant does business in this district and, thus, can be found here. *See* 29 U.S.C. § 1132(e)(2); 28 U.S.C. § 1391.

## CLAIM FOR RELIEF

*Nature of the Action*

4. This is a claim seeking payment of LTD benefits pursuant to an LTD insurance policy underwritten and administered by Liberty under Policy Number GD/GF3-850-282964-01 ("LTD Policy"), which provides LTD benefits to the employees of Advanced Home Care. This action is brought pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)). Plaintiff also seeks attorneys' fees pursuant to 29 U.S.C. § 1132(g).

*The Parties*

5. The Plaintiff, Anita Gentle ("Plaintiff"), currently age 57, resides in Landis, Rowan County, North Carolina, and was employed by Advanced Home Care, which did business within the Middle District of North Carolina during the time her claim for benefits arose.

6. The Defendant, Liberty, at all times relevant hereto, did business throughout the United States and within the Middle District of North Carolina, and offered or delivered coverage to Plaintiff in the State of North Carolina.

7. At all times relevant hereto, the LTD Policy constituted part of an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1). Incident to her status as an employee of Advanced Home Care, Plaintiff received coverage under the LTD Policy as a "Participant" as defined by § 1002(7). This claim relates to benefits under the foregoing LTD Policy.

*Statement of Facts*

8. Plaintiff was successfully employed by Advanced Home Care as a Home Care Registered Nurse until September 23, 2011, when she was involved in a motor vehicle accident that resulted in a concussion, fractured sternum, and fractured bone in her right foot.

9. Following the accident, Plaintiff could no longer work due to orthopedic injuries, balance problems, dizziness, and cognitive deficits secondary to post-concussion syndrome. Plaintiff has been unable to work since the accident.

10. Plaintiff applied for and received short-term and then LTD benefits the LTD Policy. The long-term disability coverage provided her with benefit payments in the amount of $3,559.92 per month commencing on December 24, 2011. Plaintiff alleged and submitted proof of claim establishing that she fulfilled the LTD Policy's terms and conditions, which state in relevant part:

**"Disability"** or **"Disabled"**, with respect to Long Term Disability, means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

    a. if the Covered Person is eligible for the Maximum Own Occupation benefit, "Disability" or "Disabled" means during the Elimination Period and until the Covered Person reaches the end of the Maximum Benefit Period, as a result of an Injury or Sickness, he is unable to perform the Material and Substantial Duties of his Own Occupation.

    b. i. if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

\* \* \*

**"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

\* \* \*

**"Material and Substantial Duties"**, with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

\* \* \*

**"Own Occupation"**, with respect to Long Term Disability, means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

11. Although Plaintiff's claim was adequately supported with medical records and the opinions of her treating doctors, Liberty denied Plaintiff's claim for benefits on

June 23, 2013. That determination was based on file reviews by Liberty-retained consulting physicians, internist Leonard Cosmo, M.D., and psychologist Sanjay Chandragini, M.D., who did not examine Plaintiff, but who nevertheless opined that she had no restrictions or limitations as a result of her physical and psychological conditions, respectively.

12. In December 2013, Plaintiff appealed Liberty's denial pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1; and as part of her appeal, Plaintiff submitted additional medical evidence, including letters from physiatrist David Wiercisiewski, M.D., internist Frederick Goss, M.D., and psychiatrist Nelly Welsch, M.D., supporting her disability claim, as well as a neuropsychological evaluation by Jeffrey Ewert, Ph.D., who confirmed that Plaintiff suffered from cognitive deficits.

13. Upon receiving Plaintiff's appeal, Liberty reinstated her LTD benefits on or about January 28, 2014, acknowledging that Plaintiff remained disabled not only from her former occupation as a nurse, but also any occupation for which she was qualified based on her training, education, experience, and pre-disability earnings, due to ongoing cognitive deficits resulting from her head injury.

14. However, in October 2017, despite a lack of any improvement in Plaintiff's physical or cognitive functioning, Liberty abruptly terminated her LTD benefits, asserting she was capable of performing various sedentary occupations, some of which provided only 40% income replacement compared to her pre-disability income. Liberty based that decision on a September 2017 independent medical examination by physiatrist Neal

5

Taub, M.D., as well as a file review report by Liberty's neuropsychologist Ruth Yoash-Gantz, Ph.D.

15. Plaintiff, through counsel, appealed Liberty's second denial on May 25, 2018. Plaintiff pointed out several deficiencies in Liberty's analysis and submitted new medical evidence, including an updated neuropsychological evaluation by Dr. Ewert, confirming that Plaintiff remained disabled due to cognitive deficits secondary to head injury; a functional capacity evaluation limiting Plaintiff to sedentary work; formal balance testing, the results of which were abnormal; and updated opinion evidence from her doctors supporting her entitlement to disability benefits.

16. Upon receiving Plaintiff's appeal, Liberty obtained reviews of her medical records by physiatrist Behzad Emad, M.D., and neuropsychologist Edan Critchfield, Psy.D. Dr. Emad opined that Plaintiff could perform the full range of sedentary work but failed to meaningfully address Plaintiff's balance deficits. Dr. Critchfield, meanwhile, acknowledged that Plaintiff suffered from cognitive deficits, but he disagreed that those deficits would warrant any occupational restrictions and limitations, without acknowledging the skilled nature of Plaintiff's past work as a nurse or the other occupations identified in Liberty's denial letter.

17. On August 23, 2018, Liberty denied Plaintiff's appeal, upholding the termination of benefits, asserting that the information submitted did not contain "exam findings, diagnostic test results or other forms of medical evidence substantiating that her

symptoms remained of such severity that they resulted in restrictions or limitations rendering her unable to perform the duties of any occupation after that date."

18. All required pre-litigation appeals seeking the approval of Plaintiff's claim for LTD benefits have now been exhausted. Therefore, this matter is ripe for judicial review.

19. The evidence submitted to Liberty conclusively establishes that Plaintiff has been continuously unable to return to work in any capacity since September 23, 2011, and has thus met and continues to meet the LTD Policy terms and conditions since that date. Plaintiff is therefore entitled to LTD benefits due since October 13, 2017 in the amount of $3,559.92 per month, along with prejudgment interest on all overdue payments.

20. Liberty's adverse decision on Plaintiff's claim and appeal is wrong, unreasonable, not the result of a deliberate, principled reasoning process and is not based on substantial evidence

**Relief Sought**

WHEREFORE, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against Defendant and that the Court order Defendant to pay all LTD benefits owed to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

B. That the Court order Defendant to pay Plaintiff prejudgment interest at an appropriate rate;

C. That the Court order Defendant to continue paying Plaintiff benefits so long as she continues to meet the Policy's terms and conditions;

D. That the Court award Plaintiff her attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

E. That Plaintiff recover any and all other relief to which she may be entitled, as well as the costs of suit.

Respectfully submitted this 3rd day of January, 2019.

> THE SASSER LAW FIRM, P.A.
> Attorneys for Plaintiff
>
> /s/**Charles McB. Sasser**
> Charles McB. Sasser
> N.C. State Bar No. 10027
> Suite 350
> 1011 E. Morehead Street
> Charlotte, North Carolina 28204
> Phone: (704) 342-4200
> Fax:     (704) 342-0798
> msasser@sasserlawoffice.com
>
> DeBofsky, Sherman, & Casciari, P.C.
> Attorneys for Plaintiff
>
> **/s/ Martina B. Sherman**
> Martina B. Sherman
> Illinois State Bar No. 6305531, ECF registered
> Mark D. DeBofsky
> Illinois State Bar No. 3127892, ECF registered
> 200 W. Madison St., Suite 2670
> Chicago, Illinois 60606
> Phone: (312) 561-4040
> Fax:   (312) 929-0309
> msherman@debofsky.com
> mdebofsky@debofsky.com